UNITED STATES of America,
Plaintiff,

v.

Robert D. BAILEY, Defendant.

No. C4–04–019.

United States District Court,
D. North Dakota,
Northwestern Division.

May 25, 2004.

James G. Wolff, Mohall, ND, for defendant.

**ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS
EVIDENCE**

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion to Suppress Evidence filed on April 22, 2004. A hearing on the motion was held on May 17, 2004, in Minot, North Dakota. For the reasons set forth below, the motion is **DENIED**.

**I. BACKGROUND**

On October 26, 2003, the defendant, Robert D. Bailey, was arrested at the Four Bears Casino and Lodge in New Town, North Dakota, on suspicion of having had sexual contact with a minor. Bailey was arrested following observations made by

hotel security and housekeeping staff of Bailey engaged in a sexual act with a minor female. Bureau of Indian Affairs (BIA) Police Officer Marty Foote and Three Affiliated Tribes investigator Nelson W. Heart first arrived at the casino and secured Bailey in a patrol car along with another individual by the name of Allen Pine.

The evidence revealed that shortly after Bailey and Pine had been placed in a patrol car, Investigator Heart activated an audiovisual recording device within the squad car. The audiovisual recording was received into evidence. *See* Government Exhibit No. 3. The officers then transported Bailey and Pine to the law enforcement center in New Town for processing.

At approximately 8:00 p.m., Criminal Investigator Nelson W. Heart informed Bailey of his *Miranda* rights and asked him to execute a waiver of rights form. *See* Government Exhibit No. 1. Investigator Heart read Bailey his *Miranda* rights in the presence of BIA Officer Marty Foote. Bailey verbally acknowledged an understanding of his *Miranda* rights and signed the waiver of rights form in the presence of Investigator Heart and Officer Foote.

Thereafter, Bailey was interviewed by Investigator Heart. The information obtained during the interview included Bailey's date and place of birth; his present address; the name, address, and telephone number of his employer; and specific information about the offense conduct as well as the times and places of Bailey's past sexual encounters involving the same 15–year old girl. Bailey also described how he and the alleged victim obtained a room at the Four Bears Casino and Lodge in New Town.

It is undisputed that both Robert Bailey and Allen Pine had been drinking alcohol on the day of Bailey's arrest (October 26, 2003). Bailey and Pine had traveled from Busby, Montana, to New Town on a six-hour "road trip" and had consumed a considerable amount of alcohol throughout the weekend. Bailey contends that he was extremely intoxicated and, as a result, could not have knowingly, intelligently, and voluntarily waived his *Miranda* rights and privilege against self-incrimination.

Investigator Nelson Heart testified at the suppression hearing on May 17, 2004. Heart interviewed Bailey on October 26, 2003, at the New Town Police Department. The interview took place at approximately 7:46 p.m. Present during the interview was BIA Officer Marty Foote. The evidence revealed that Heart advised Bailey of his *Miranda* rights; gave Bailey a copy of his rights; and had Bailey read the *Miranda* rights and sign a waiver of rights form. *See* Government Exhibit No. 1. Heart asked Bailey whether he understood his rights and Bailey acknowledged he did.

With respect to Bailey's physical condition during the interview, Investigator Heart said Bailey was awake and alert, that he spoke clearly with no slurring of his speech, that Bailey sat on a chair without any problems, and Bailey provided detailed information and gave appropriate responses to the questions asked. Investigator Heart said Bailey provided specific details, including dates and locations, of where Bailey had prior sexual liaisons with the alleged 15–year old victim. In addition, Heart said Bailey provided specific details as to how he and the 15–year old girl had obtained a room at the Four Bears Casino and Lodge.

On October 28, 2003, Investigator Heart again met with Bailey. At that time Heart provided Bailey with a copy of the police report. *See* Government Exhibit No. 2. Bailey read the report in its entirety and initialed each paragraph of the report. Further, Bailey noted and signed the following at the end of the police report in his own handwriting:

"I have read the above two (2) pages. They are true and accurate."

Investigator Heart said Bailey never denied any of the facts contained in the police report and never made any mention of being drunk, intoxicated, confused, or unable to understand what had transpired. Heart recalled that on October 28, 2003, Bailey inquired about receiving a "floater" through the Tribal Court whereby he (Bailey) would agree to remain off the reservation for a period of time in lieu of further incarceration or criminal consequences. Heart said Bailey was cooperative and provided accurate and detailed information concerning his road trip to New Town and the nature and extent of his previous sexual liaisons with the 15–year old minor.

BIA Officer Marty Foote also testified at the suppression hearing on May 17, 2004. Foote said he was working on October 26, 2003, and had contact with Bailey. Foote said Bailey and his friend, Allen Pine, were transported to the New Town Police Department. Pine was described by Officer Foote as being "pretty intoxicated." However, Foote said Bailey appeared to be in "fine condition." He said Bailey had no trouble walking or talking, he did not slur his speech, there was no odor of alcohol on his breath, and Bailey was not angry or combative. Instead, Officer Foote described Bailey as being very cooperative and forthright.

Officer Foote also described the audiovisual recording of Bailey and Pine. Foote said the videotape is approximately 30–35 minutes long. At the end of the tape Bailey is sitting in the patrol car and the 15–year old minor was located in an adjacent patrol car. Bailey is heard attempting to talk to the alleged victim and telling her "don't tell them anything," "don't say anything," and "I love you."

Officer Foote took photographs of Bailey at the New Town Police Department. During the photo session Bailey had no trouble standing, walking, or following directions. Foote described Bailey as being "polite and considerate." Foote also said the photographs revealed Bailey had a hickey on his neck.

With respect to the interview of Bailey that took place on October 26, 2003, Officer Foote was present throughout the interview and heard Investigator Heart provide Bailey with his *Miranda* warnings. Foote said Investigator Heart reviewed the waiver of rights form with Bailey in detail. Foote described Bailey as being awake, alert, responsive to questions, exhibiting normal speech, and exhibiting no signs or symptoms of being intoxicated. Investigator Heart and Officer Foote each testified that Bailey was read his rights and understood and waived his *Miranda* rights before being questioned.

Finally, Robert Bailey testified at the suppression hearing. Bailey is 24–years old and resides in Busby, Montana. He is employed with the Department of Energy in the accounting department. Bailey said that he and his friend (Allen Pine) traveled to New Town on Friday, October 26, 2003, and began drinking at noon. Bailey said he and Pine drank all weekend and they stayed at the Four Bears Casino and Lodge in New Town.

With respect to his alcohol consumption on October 26, 2003, Bailey said he and Allen Pine were drinking in the parking lot at the casino. They had two cases of Budweiser beer and one pint of 80–proof tequila in the car. Bailey estimated he drank 4–6 beers in the parking lot and approximately 4–5 shots of tequila. Bailey and Pine then moved their car behind the casino to a picnic area and continued their drinking escapade. Bailey estimated he drank 3–5 beers at the picnic area and the remainder of the tequila. Bailey said he and Allen Pine were drinking at the picnic

area when the 15–year old alleged victim joined them in the car.

Bailey said that after consuming alcohol, he decided to walk down near the Missouri River which is located near the casino. Bailey said he was "feeling good" and he thought about taking a boat out on the river. Bailey then walked back to his car and discovered there was "beer splattered all over the place." He said he felt depressed and again walked back to the Missouri River and "got lost in the waves and the water." Shortly thereafter, Bailey walked back to the casino and was approached by security officers.

Bailey testified that it was at this approximate time that his mind "began playing games" and he experienced blackouts. The next time period Bailey recalled is when he came to and was sitting at a snack bar inside the casino. Bailey had no idea how he got to the snack bar. He was unable to remember much of what occurred on October 26, 2003. Bailey said he remembers being placed in the jail at the New Town Police Department but he could not recall being booked or being placed in a holding cell.

Bailey admitted his signature appeared on the waiver of *Miranda* rights form (Government Exhibit No. 1). However, he said the waiver of rights form was never read to him nor was he informed of his *Miranda* rights. Bailey also admitted his initials and signature appear on Investigator Heart's police report (Government Exhibit No. 2) but he contends the only reason he initialed and signed the report was because his release from jail was conditioned upon signing the form. Bailey said he signed the report simply because he wanted to please Investigator Heart and obtain his release from jail.

On rebuttal, Investigator Heart testified that when he met with Bailey on October 28, 2003, Bailey had already been released from custody and was wearing street clothes. Investigator Heart said Bailey's release was never conditioned upon Bailey's meeting with Heart or signing any documents.

On February 26, 2004, the grand jury for the District of North Dakota handed down a one-Count indictment charging Bailey with sexual abuse of a minor in violation of 18 U.S.C. § 2243(a). This motion to suppress was filed on April 22, 2004.

## II. *LEGAL ANALYSIS*

In *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), the United States Supreme Court held that the validity of a *Miranda* waiver has two distinct dimensions; namely, whether the waiver was voluntary and whether it is knowing and intelligent. *United States v. Turner*, 157 F.3d 552, 555 (8th Cir.1998). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir.1994).

It is clear the government may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of a defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is incumbent upon the government to demonstrate that the defendant voluntarily, knowingly, and intelligently waived his privilege against self-incrimination and his right to have retained or appointed counsel. 384 U.S. 436, 475, 86 S.Ct. 1602. The government has

the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168–169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In this case, Bailey has not argued that his waiver of rights was "involuntary" in the sense that he was intimidated, coerced, or deceived into signing a waiver. Instead, Bailey essentially contends his waiver of rights was not made voluntarily, knowingly, and intelligently because he was intoxicated at the time of the police interview with Investigator Nelson Heart.

■ The Eighth Circuit has held that a defendant's intoxication may invalidate a *Miranda* waiver. *See United States v. Turner,* 157 F.3d 552, 555 (8th Cir.1998); *United States v. Korn,* 138 F.3d 1239, 1240 (8th Cir.1998); *United States v. Byrne,* 83 F.3d 984, 989 (8th Cir.1996). However, the Eighth Circuit has further stated that intoxication will not necessarily or per se invalidate a *Miranda* warning. In other words, the mere allegation that a suspect is intoxicated during a police interview does not automatically invalidate a *Miranda* waiver. The district court is required to consider the totality of the circumstances.

In *United States v. Turner,* 157 F.3d 552, 555 (8th Cir.1998), the defendant alleged intoxication as a reason to invalidate a *Miranda* waiver. In *Turner,* the defendant had a low IQ, was intoxicated by PCP, and suffered from a mental illness at the time of the police interrogation. Nevertheless, the Eighth Circuit held the defendant's actions and statements made during the interview process indicated that he clearly understood his rights and knowingly waived them. The Court noted the defendant acted in a manner more consistent with a person attempting to avoid being caught than a person who did not know what he was doing. 157 F.3d 552, 555. The Court also noted the defendant

was cooperative, reviewed and initialed each admonition on the waiver form, agreed to answer questions, and gave accurate information to the interviewers. The facts as presented in this case do not differ significantly from the facts as outlined in *United States v. Turner.*

■ In this case, there is no contention that Bailey is a person of low intelligence or that he suffers from any mental illness. There is no question that Bailey and his traveling companion, Allen Pine, were consuming alcohol on October 26, 2003. However, Bailey's actions, mannerisms, and conduct reveal that he was not intoxicated. More important, the evidence supports a finding that Bailey was able to knowingly and intelligently understand what was occurring and he made a voluntary waiver of his *Miranda* rights before being questioned. The undisputed evidence reveals that Bailey did not exhibit signs and symptoms of intoxication. Instead, he was cooperative, coherent, and communicative throughout the interview with Investigator Nelson Heart. Bailey was able to communicate, walk, stand, and sit without any problems on October 26, 2003. None of the police officers who had contact with Bailey on the date of his arrest felt he was intoxicated. The Court finds the testimony of Investigator Heart and Officer Foote to be credible and the testimony of Bailey to be incredible.

In addition, it is also clear that Bailey was concerned about being caught. His conversations with Allen Pine in the patrol car were caught on an audio-video recording and exhibit a clear ability to understand and comprehend his dilemma. Bailey spent a considerable amount of time in the patrol car attempting to persuade his drunken road trip companion (Allen Pine) to join in concocting a story to lie about their whereabouts on October 26, 2003. The recording reveals that Allen Pine was

extremely intoxicated and shows that Pine was unable to walk from the patrol car into the police station without assistance. However, the recording does not reveal a similar state of intoxication on the part of Bailey. The Court has carefully reviewed the recording. To the contrary, the Court finds that Bailey was in control of his thought process and reasoning. Bailey was able to walk in a normal fashion and walk without any assistance from the patrol car to the police station for questioning. At all times on the recording, Bailey acted in a manner more consistent with a person attempting to avoid being caught and charged rather than a person who did not know what he was doing. It is clear from the totality of the evidence presented that Bailey was not intoxicated and he was able to understand and knowingly waive his *Miranda* rights before being questioned. Bailey was cooperative, reviewed and signed the waiver form, agreed to answer questions, gave accurate information, and had a clear understanding of his *Miranda* rights on October 26, 2003. The Government has sustained its burden of demonstrating, by a preponderance of the evidence, that Bailey's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. The statements made by Bailey while in custody should not be excluded from evidence at trial.

## III. *CONCLUSION*

The Court has carefully considered the totality of the circumstances in order to determine whether the defendant's will was overcome and whether he was intoxicated at the time of his confession. Based upon the evidence presented at the suppression hearing, the Court expressly finds there are no grounds for suppressing the statements made by Bailey to Investigator Heart and Officer Foote. Bailey had consumed alcohol on October 26, 2003, but he was not intoxicated and he was readily able to understand and knowingly waived

his *Miranda* rights. The evidence clearly revealed that Bailey was in control of his faculties and he made a voluntary, intelligent, and knowing waiver of his *Miranda* rights. There is nothing about the police questioning that was improper or in any way coercive. The defendant validly and knowingly waived his *Miranda* rights. The government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence and that burden has been met. Accordingly, the Court denies the Defendant's Motion to Suppress (**Docket No. 16**).

**IT IS SO ORDERED.**